UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SHAMSEY DUNCAN, ET AL         CIVIL ACTION NO. 15-cv-1994

VERSUS

WAL-MART LOUISIANA, LLC       MAGISTRATE JUDGE HORNSBY

## MEMORANDUM RULING

### Introduction

Shamsey Duncan ("Plaintiff"), who was several months pregnant, arrived at work at a Wal-Mart Supercenter in Bossier City and fell while walking across a large mat in front of a Reddy Ice machine near the front of the store. Plaintiff clocked in and worked a few hours before feeling something was not right, and she received permission to leave early. She went to a hospital and learned that night that her child would be stillborn, and an experience she had with another baby only two years earlier.

Plaintiff and Charles Johnson (the father of the child) filed suit against Wal-Mart in state court for Plaintiff's personal injuries and for wrongful death of the child. Wal-Mart removed the case based on diversity jurisdiction. Wal-Mart asserted a cross-claim against Reddy Ice Corp. based on an indemnification provision in their contract. Plaintiff then amended her complaint to add Reddy Ice as a defendant. All parties filed written consent to have the case decided by the undersigned Magistrate Judge, and the matter was referred pursuant to 28 U.S.C. § 636(c). Before the court are Motions for Summary Judgment (Docs.

38 and 40) by Wal-Mart and Reddy Ice. For the reasons that follow, both motions will be granted.

**Applicable Louisiana Law**

Under Louisiana law, a merchant owes a duty to all persons who use its premises "to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition." La. R.S. 9:2800.6(A). Regardless of a merchant's affirmative duty to keep the premises in a reasonably safe condition, a merchant is not the insurer of the safety of his patrons. Noel v. Target Corp. of Minn., 2007 WL 2572308, *1 (W.D. La. 2007). To impose liability on a merchant under the statute, the claimant "shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care."

La. R.S. 9:2800.6(B).

A merchant is presumed to have "constructive notice" of the condition if "the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. R.S. 9:2800.6(C)(1). "The presence of an employee of the merchant in the vicinity in which the condition exists does

not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition." Id.

The plaintiff "must make a positive showing of the existence of the condition prior to the fall." White v. Wal-Mart Stores, Inc., 699 So.2d 1081, 1084 (La. 1997). Whether the condition existed for a sufficient period of time is necessarily a fact question, but the plaintiff must produce evidence on the point to defeat summary judgment. "Mere speculation or suggestion" is not sufficient to meet this burden, and courts will not infer constructive notice for the purposes of summary judgment where the plaintiff's allegations are "no more likely than any other potential scenario." Bagley v. Albertson's, Inc., 492 F.2d 328, 330 (5th Cir. 2007).

**Relevant Facts**

The only summary judgment evidence relevant to the slip and fall claim is Plaintiff's deposition testimony. Plaintiff testified that she arrived at work around the lunch hour on a June day when it was hot and there was no rain. She walked through the front of the store and in front of the Reddy Ice machine, a path that she said she typically took when she arrived for work. She had walked that path numerous times during her four years of employment at the store. There was a large black mat in front of the ice machine. Plaintiff testified that sometimes the mat was there, and sometimes it was not. She stated that "I done walked over that mat several times when it's there on the floor, and I had never fell."

Plaintiff testified that she was looking down, then looked up, and then remembers that she slipped and fell. Plaintiff fell forward and landed on her hands and knees. She said the mat slid under her feet, which caused her to fall. Plaintiff testified that she stood up and looked at the mat, and "you could see the water that was laying up under the mat." Defense counsel asked Plaintiff if there was any water on the floor outside of where the rug was, and she answered, "No, sir, I didn't see any water on the outside of the rug. Just up under the mat." Plaintiff was asked if the top of the rug was wet. She first said she never touched the top of it, but then added, "My hands wasn't that wet when I got up; so I can't say the top of the rug was wet. It just was dirt on my hands. No water."

Plaintiff testified that her Wal-Mart training taught her that an employee who spotted a spill was supposed to stand there and guard the spill until another employee came to assist with cleanup or take her place. She said employees at the store generally followed the procedure, but some would walk past a spill and act like they didn't see it. Plaintiff had never heard of any complaints of the ice machine leaking or dripping water during her four years at the store, and she admitted that she had, "no idea" how the water got beneath the mat. She made on more than one occasion statements such as, "I don't know how that water got under the mat."

Plaintiff testified that she was not aware of any history of the site of the fall being a place where water was known to accumulate, either from the ice machine or any other source. She said no one at Wal-Mart, either that day or later, expressed any ideas or opinions

about how the water got there. No one at Wal-Mart ever said that they were aware that the water was in the area. Plaintiff was asked if she knew how long the water had been there, and she answered, "No, sir."

Plaintiff was asked specifically about the ice machine. She said, "I can't say the ice machine was the source of the water ...; I don't know where the water came from that day." She was not aware of any repairs made to the machine after the accident, and she offered no other testimony to link the ice machine to the water.

Plaintiff told some other employees about her fall, and they suggested she report it to management. Plaintiff testified that a supervisor told her to fill out what Plaintiff believed was an accident report, and she returned it to the supervisor. Plaintiff later had difficulty obtaining a copy of the report from Wal-Mart. Defense counsel suggested that the form was actually a report for a worker's compensation claim, and Plaintiff said that she had later received a phone call about such a claim, which confused her because she did not intend to assert a worker's compensation claim. Plaintiff did request a leave of absence after she lost her baby.

Plaintiff was asked what she thought Wal-Mart did wrong or could have done better to prevent the accident. Plaintiff complained that the store "wouldn't cooperate with me" as far as getting an accident report, and she suggested they could "better check on things in the store" to make sure they were not leaking. Plaintiff suggested that employees should also

check under rugs in areas near the fish tanks or other potential sources of water. She said she did not know if anyone checked the ice machine to ensure that it was in good working order.

**Analysis**

Plaintiff did not testify regarding any evidence that a Wal-Mart or Reddy Ice agent or employee actually created the liquid hazard beneath the mat. Plaintiff also has no evidence that Wal-Mart or Reddy Ice had actual or constructive notice of the liquid under the mat. Plaintiff testified that the liquid was completely beneath the mat, so it was not visible to any store employees who might have been in the area. There is not even an indication that an employee could have seen from above that the mat was damp. Plaintiff said her hands were not wet, merely dirty, after she fell, and she was not aware of any involvement of liquid in her fall until she saw it beneath the mat.

Plaintiff's counsel speculates that there are "several reasonable explanations" for the fall. She suggests a Wal-Mart employee "may" have decided to put a mat in front of the ice unit after noticing water on the floor, or an employee "might" have seen water around the cooler earlier in the day and dried up the water around the mat but failed to detect the liquid beneath the mat. There is, however, zero evidence to support such suppositions. Plaintiff was asked in her deposition if she knew whether somebody might have put the mat down after the area was wet, or if perhaps a customer had spilled something that got beneath the mat, or if something had soaked through the mat. Plaintiff answered, "I don't know, sir." She added, "I don't know where that water came from under that mat."

There is also a complete lack of evidence that the water was present for any period of time during which a reasonable merchant should have discovered the condition. There is nothing but complete speculation regarding how the water got there and how long it had been there. As noted above, "[m]ere speculation or suggestion" is not sufficient to meet the plaintiff's burden on this issue, and courts will not infer constructive notice for the purposes of summary judgment where the plaintiff's allegations are "no more likely than any other potential scenario." Bagley, 492 F.2d at 330.

The Fifth Circuit has frequently affirmed summary judgment for merchants in similar settings. See, e.g., Adams v. Dolgencorp, LLC, 559 Fed. Appx. 383 (5th Cir. 2014) (no evidence in security footage or otherwise as to how long the liquid was on the floor); Mohammad v. PF Chang's China Bistro, 548 Fed. Appx. 236 (5th Cir. 2013) (no significant probative evidence that liquid was on the floor for any length of time); Taylor v. Wal-Mart Stores, Inc., 464 Fed. Appx. 337 (5th Cir. 2012) (camera footage showed customers walk through the area for about an hour before the fall without incident or sign of liquid); Ferrant v. Lowe's Home Centers, Inc., 494 Fed. Appx. 458 (5th Cir. 2012) (claimant produced no evidence whatsoever to show that a protruding board existed for some period of time before her fall; burden not met as to constructive notice); and Beverly v. Wal-Mart Stores, Inc., 428 Fed. Appx. 449 (5th Cir. 2011) (no evidence from which to infer that merchant was on constructive notice of a puddle near a soap display).

Plaintiff argues that Wal-Mart should be held liable because it failed to properly investigate the accident after it happened. She asserts that it is inconceivable that statements were not taken from store personnel in the area. She also argues that her observation of a fan in the area after the accident suggests that there was some investigation. Plaintiff perhaps suggests that an investigation would or perhaps did uncover some evidence that might help her show fault, but there is simply no evidence to support such a suggestion. Plaintiff also cites no Louisiana law for the proposition that a merchant is obligated to conduct a thorough investigation or that a merchant can be held liable under the statute for not doing so. See Bertrand v. Fisher, 2009 WL 5215988, *8 (W.D. La. 2009) ("To the extent [store employee] may have had a duty to investigate and preserve evidence, that duty would have no bearing at all on the injuries claimed by plaintiff as that duty would have arisen only after the accident occurred.")

**Conclusion**

Plaintiff has presented evidence that she slipped on a mat, and she witnessed water or some liquid beneath the mat. There is no evidence that Wal-Mart or Reddy Ice were actually responsible for the liquid's presence. A customer or other supplier could also have been the source, but we simply do not know. There is no evidence that the liquid was apparent or visible at all to even an observant employee in the area. Finally, there is no evidence as to the length of time the liquid may have been on the floor. Mere speculation on that issue has repeatedly been rejected as grounds for defeating summary judgment.

Accordingly, the **Motion for Summary Judgment (Doc. 38)** filed by Reddy Ice and the **Motion for Summary Judgment (Doc. 40)** filed by Wal-Mart are **granted**. The claims of Plaintiff and Mr. Johnson are dismissed with prejudice.

Reddy Ice moved, alternatively, to declare the indemnity provision in its supplier agreement with Wal-Mart unenforceable under governing Arkansas law. Because this argument was raised in the alternative to the attack on the merits of Plaintiff's claims, the court has not reached it in this ruling. It was not clear to the court whether Wal-Mart seeks indemnification only for any damage award to Plaintiff, which is no longer on the table, or if it also seeks recovery from Reddy Ice for its costs of legal defense. If Reddy Ice intended to pursue the challenge to the indemnity clause even if both defendants prevailed on the merits of the principal claim, counsel for Reddy Ice should notify the court within five days.

The court will delay entry of a final judgment under Fed. R. Civ. Pro. 58 until that issue has been resolved by agreement between Reddy Ice and Wal-Mart or, if needed, an additional ruling from the court. The delay for any party to file a notice of appeal will not commence until such a judgment is entered. F.R.A.P. 4(a).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 15th day of November, 2016.

_____
Mark L. Hornsby
U.S. Magistrate Judge